24548. PICTORIAL PAPER PACKAGE CORPORATION *v.* LANE DRUG STORES INCORPORATED.

BROYLES, C. J. On an agreed statement of facts this case was tried by a judge of the municipal court of Atlanta, sitting without a jury. The controlling question was whether there was an implied promise by the defendant to pay for the goods received by it from the plaintiff; and there was sufficient evidence in the agreed statement of facts to resolve that issue in favor of the defendant, and the judge did not err in ren-

dering judgment in its favor, nor subsequently in refusing to grant a new trial.

*Judgment affirmed. MacIntyre, J., concurs. Guerry, J., dissents.*

DECIDED MAY 24, 1935. REHEARING DENIED JUNE 21, 1935.

*Ralph R. Quillian, Evins & Calhoun,* for plaintiff.

*Jones, Powers & Williams,* for defendant.

GUERRY, J., dissenting. The Pictorial Paper Package Company of Aurora, Ill., prior to January 1, 1932, acting under an order from Lane Drug Stores Inc., made up a certain named amount of boxes and labels used in connection with the prescription business of Lane Drug Stores Inc., which merchandise so made up was to be held for shipping instructions from the buyer, and to be shipped to it as directed, and payment made therefor as shipped by the 10th of the month. This order and contract was similar to a prior course of business between the parties. On January 19, 1932, a receiver was appointed for Lane Drug Stores Inc., and on June 3, 1932, it was adjudicated a bankrupt and a trustee appointed. Neither the receiver nor the trustee ever gave any shipping instructions for said merchandise. The schedule of creditors filed did not list the Pictorial Paper Package Company, nor did the inventory of the Lane Drug Stores Inc. include the boxes and labels which the plaintiff had manufactured and stored in its warehouse in Aurora, Ill. On June 17, 1932, the trustee in bankruptcy under an order of the referee sold the assets of the bankrupt to the defendant in this case, a new, separate, and independent corporation. The pertinent portions of the bill of sale to the defendant conveyed as follows: "all the assets of the Lane Drug Stores Incorporated (the bankrupt) in his hands as trustee, being all of the stock of goods, wares and merchandise, and the furniture and fixtures and equipment of every kind and character owned by said trustee and located in the stores and warehouses, a schedule of which stores and warehouses being hereto attached [the schedule not listing the merchandise in Aurora, Ill.] . . also all other assets owned by said trustee of whatever kind or character wherever situated." At said sale it was announced that the trustee had ordered shipment of some merchandise for the stores, which had not been received, and that the purchaser at the sale was at liberty to

accept. or reject the same, said purchaser to pay for such portion thereof if accepted. Thereafter, during July and August, the defendant ordered from the plaintiff and received and paid for merchandise made up under the order, aggregating $284.74. Thereafter, on August 25, the purchaser at the bankrupt sale wrote to the plaintiff to ship all the remainder of the merchandise it had manufactured for the bankrupt, claiming that it was already the legal property of the defendant by reason of the purchase from the trustee in bankruptcy of the assets of the original purchaser. It also demanded by letter a return of the $284.74. Plaintiff, relying on the truthfulness of defendant's statement, which was made by defendant in good faith, returned the $284.74, and shipped to defendant the remainder of the merchandise. Plaintiff had never received any notice of bankruptcy. It then filed its claim in the bankrupt court for the value of the merchandise, to which claim the trustee filed his objection on the ground that said merchandise had never been delivered to the bankrupt or trustee, was not included in the inventory, that plaintiff was not listed as creditor of the bankrupt, and the trustee disclaimed any right, title or interest in said merchandise. The claim was then withdrawn and the present suit filed, seeking to recover the $284.74, and the invoice price of the merchandise shipped. It was further admitted that the defendant would not have accepted shipment of any portion of merchandise if it had not believed that the same constituted a portion of the assets of the bankrupt's estate, passing to it under the trustee's sale. At the time of receipt of demand for payment on January 10, 1934, defendant had used 50% of the merchandise, the remainder not being usable in its business.

The Code of 1933, § 3-107 (Civil Code of 1910, § 5513), provides: "Ordinarily, when one renders services or transfers property valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." Section 20-1007 (Civil Code of 1910, § 4317) provides that "Payments . . made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence, . . are deemed voluntary and can not be recovered." The plaintiff in the present case relied on the truthfulness of the defendant's statement, which was itself made in good faith, that the defendant was the purchaser of the merchandise which the plaintiff had manufactured for the bank-

rupt, and returned the money and shipped the goods to the defendants under the mistaken assumption that defendant was the purchaser thereof from the bankrupt's estate. The defendant did not buy nor did the trustee in bankruptcy sell, the merchandise manufactured by the plaintiff, as a part of the bankrupt's estate. Defendant is not in equity and good conscience entitled to keep the same, without paying therefor. *Stern* v. *Howell,* 33 *Ga. App.* 693 (127 S. E. 775). Having ordered and paid for an amount of goods to the value of $284.74, the defendant procured the plaintiff to refund this amount through a mistake of fact. The defendant has, through a mistake of fact, procured from the plaintiff the remainder of the merchandise, and used more than one half thereof. Without an offer to return it, the defendant impliedly agreed to pay on a quantum meruit basis. In *Sheppard* v. *Lang,* 122 *Ga.* 607 (50 S. E. 371), it was said: "Where one person, believing he owed another an open store account, gave the other money with which to pay it, and the second person accepted the money and promised to credit on the books the amount actually due and to refund the balance if any, and it subsequently appeared that the one who gave the money to pay the account was not indebted to the other. . . *Held,* that the first person had a right to bring an action" therefor. *Carey* v. *Simpson,* 15 *Ga. App.* 280 (82 S. E. 918) ; 21 R. C. L. 164.

The bona fides of the defendant's claim to merchandise, which was assented to by plaintiff under a mistake of fact, does not prevent the plaintiff from maintaining an action against the defendant on an implied promise to pay. I think, under the evidence submitted, the plaintiff was entitled to a judgment for the value of the goods. In the original contract between plaintiff and bankrupt, the goods manufactured by plaintiff were to be shipped out as ordered, and those shipped were to be paid for by the 10th of the succeeding month. It is inferable that upon a failure of the bankrupt so to pay, the plaintiff might decline to make further shipments. The present defendant, through a mistake of fact, procured the plaintiff to refund money already paid and ship the remainder of the goods. Even though the defendant would not have ordered the remainder of the goods shipped had it known they were not included in the sale of bankrupt's assets, equity and good conscience demand that it pay for what it has used and gotten the

benefit of. It is insisted by the defendant in error that "the law will not imply a promise against an express declaration of the party to be charged made at the time of the supposed undertaking" (5 C. J. 1385), and that this is the controlling principle in this case. The act of returning the money and shipping the goods to the defendant, while it might be considered "in defiance of plaintiff's rights and under a claim of adverse right," was still not a voluntary relinquishment by the plaintiff of his rights, for it is admitted that it was done under a mistaken assumption that the goods had been administered as a part of the bankrupt's estate. In such a case the implied promise to pay therefor will arise. When the defendant, after notice of the mutual mistake, continues to keep and enjoy the goods, the law raises an implied promise to pay therefor. I think the evidence demanded a verdict for the plaintiff.